IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GERALD A. LECHLITER,<br><br>    Plaintiff,<br><br> v.<br><br>DEPARTMENT OF THE ARMY, and<br>THE ACTING SECRETARY OF THE<br>ARMY, Honorable Francis J. Harvey<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 04-814-KAJ<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION

Gerald A. Lechliter, 44 Harborview Road, Lewes, DE 19958; Pro Se.

Leonard P. Stark, Esq., U.S. Attorney's Office, The Nemours Building, 1007 Orange Street, Suite 700, P.O. Box 2046, Wilmington, DE 19899-2046; Counsel for Defendants.
  Of Counsel:  Major Susan B. Sutherland, U.S. Army Litigation Division, 901 N. Stuart Street, Suite 400, Arlington, Virginia 22203.

Wilmington, Delaware
February 27, 2006



JORDAN, District Judge

I. INTRODUCTION

Before me is a Motion to Dismiss for failure to state a claim upon which relief can be granted (Docket Item ["D.I."] 8; the "Motion") filed by defendants, the Department of the Army and the Acting Secretary of the Army (collectively, the "Department" or the "Defendants"). The Second Amended Complaint (D. I. 14; the "Complaint"), filed by plaintiff Gerald Lechliter ("Lechliter"), alleges that the Department failed to follow its own procedures in processing his request to correct factual errors in his record. (Id. at ¶ 46.) Lechliter claims he is entitled to relief under the Privacy Act (the "Act"), 5 U.S.C. § 552a(g)(2)(A) and (1)(D), because the Department failed to follow procedures for amending his record under § 552a(d)(3) of the Act. (Id.)

Jurisdiction is appropriate under 5 U.S.C. § 552a(g)(1) and 28 U.S.C. § 1331. For the reasons that follow, the Motion will be granted in part and denied in part.

II. BACKGROUND[1]

A. Lechliter's Medical Evaluation and Retirement

While serving on active duty in the Army in the summer of 1998, Gerald Lechliter was evaluated by a Medical Evaluation Board (the "MEB") to determine if he was fit for duty. (D.I. 14 at ¶¶ 7-8.) In November of that same year, the MEB determined that Lechliter did not meet the Army's medical standards for retention on active duty, and referred his record to a Physical Evaluation Board ("PEB") for further determinations. (Id. at ¶ 9.) In December of 1998, the PEB found Lechliter to be fit for duty. (Id. at ¶ 10.) Lechliter appealed this decision, and in January of 1999 the U.S. Army Physical

---

[1]The following information is drawn from the parties' submissions and is viewed in the light most favorable to the plaintiff.

Disability Agency denied Lechliter's challenge to the PEB finding. (*Id.* at ¶ 11.) Lechliter subsequently retired for longevity on June 1, 1999. (*Id.* at ¶ 12.)

### B.     Efforts to Amend Retirement Status

In October of 2000, Lechliter applied to the Army Board for Correction of Military Records ("ABCMR") to change his cause for retirement from longevity to disability. (D.I. 14 at ¶ 13.) In September of 2001, the ABCMR denied Lechliter's request to change his disability determination and provided him with a written Memorandum of Consideration explaining its decision. (*Id.* at ¶ 14.) Lechliter alleges that the memorandum contained omissions and factually incorrect information. (*Id.* at ¶ 15.)

Lechliter decided that he wanted to have his records amended to address, as he sees it, factual corrections needed in records produced by the MEB, the PEB, the ABCMR, and yet another acronym-encrusted subagency, the U.S. Army Physical Disability Agency ("USAPDA"). (*See, id.* at ¶¶ 11, 16.) He also wanted corrections to one of his officer efficiency reports and to his medical records. (*Id.* at ¶ 16.)

After consulting with Rose Marie Christensen ("Christensen"), chief of the Department's Freedom of Information and Privacy Acts office, Lechliter submitted, in April 2002, a request to Personnel Command[2] to amend his records under the Privacy Act. (*Id.* at ¶¶ 16, 20.) In response, Ange Nash ("Nash"), chief of the Special Inquiries Team for Personnel Command, informed Lechliter by telephone on April 17, 2002 that his amendments request had again been denied and that he would have to go through

---

[2]Lechliter identifies this subagency as "USA Reserve PERSCOM." (D.I. 14 at ¶¶ 16, 21.)

2

the ABCMR.³ (*Id.* at ¶ 22.) Ms. Nash then followed this call with a letter dated April 27, 2002, which Lechliter alleges directed him to send his appeal to Personnel Command. (*Id.* at ¶ 25). On April 27, 2002, Lechliter sent an appeal to the commander of Personnel Command. (*Id.*)

On May 8, 2002, Lechliter received a letter from Personnel Command informing him that his appeal and original packet had been sent to the Department of the Army Freedom of Information and Privacy Acts office. (*Id.* at ¶ 28.) Lechliter then received a letter from Christensen dated July 10, 2002, stating that Department of the Army Privacy Act Review Board did not have jurisdiction over his claim and advised him to pursue record corrections at the ABCMR.⁴ (*Id.* at ¶ 30.)

In September of 2002, Lechliter submitted both an original Privacy Act amendment request and a request for reconsideration to the ABCMR. (*Id.* at ¶ 37.) In July 2003, the ABCMR corrected information in its September 2001 Memorandum of Consideration, but did not correct other records or change Lechliter's retirement status to disability retirement. (*Id.* at ¶ 38.)

---

³Lechliter asserts that the letter violated 32 C.F.R. § 505.1(g) because Nash did not have the authority as a GS-11 chief to issue a denial letter and the letter contained no statement that Nash was acting on behalf of an Access and Amendment Refusal Authority (AARA). (D.I. 14 at ¶¶ 18, 23-24.)

⁴ The Defendants' motion to dismiss stated that this letter was sent by the Army Privacy Act Review Board. (D.I. 9 at 3.) Lechliter's brief in opposition to the motion to dismiss disputes this point, asserting that the letter came from the Department's Freedom of Information and Privacy Acts. (D.I. 10 at 1.) To the extent the distinction is relevant, I can only presume at this point that the Army Privacy Act Review Board is somehow associated with the Department's Freedom of Information and Privacy Acts office.

Lechliter asserts that he suffers from a diagnosed service-connected nervous condition for which the Department of Veterans Affairs pays him disability compensation. (*Id.* at ¶ 41.) He further alleges that the Defendants' mishandling of his requests for amendment have exacerbated his condition, causing him to suffer from increased symptoms such as loss of sleep, increased irritability, and loss of appetite. (*Id.* at ¶ 42.)

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss requires a court to accept as true all material allegations of the complaint. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (internal citation omitted). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* (internal citation omitted). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). In the case of a *pro se* plaintiff, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Taylor v. Cox*, 912 F. Supp. 140, 143 (E.D. Pa. 1995). A *pro se* complaint can only be dismissed for failure to state a claim if it appears "beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## IV.   DISCUSSION

### A.   Collateral Attack

Lechliter first brings a claim under the Privacy Act, 5 U.S.C. § 552a(g)(1)(A), requesting review of alleged errors in his records.[5] The Department has moved to dismiss on the grounds that the Complaint is an improper collateral attack on the Department's decision regarding his disability status. (D.I. 9 at 5.)

"The Privacy Act allows for amendment of factual or historical errors. It is not ... a vehicle for amending the judgments of federal officials or ... other[s] ... as those judgments are reflected in records maintained by federal agencies." *Kleiman v. Department of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992) (citation omitted); *see also Pellerin v. Veterans Admin. of U.S. Government*, 790 F.2d 1553, 1555 (11th Cir. 1986) (quoting *Rogers v. United States Department of Labor*, 607 F.Supp. 697, 699 (N.D. Cal. 1985) ("The Privacy Act ... may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions.") (citation omitted)).

Lechliter's Complaint asks that I "order correction of the record or remand to the agency with an order to process plaintiff's ... amendment request... ." (D.I. 14 at "Prayer for Relief".) To the extent that Lechliter is asking me to alter the ultimate determination by the Department that he is not disabled, rather than to correct factual errors recited in

---

[5] That statute provides that an individual can bring a civil action against an agency that "makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection[.]" 5. U.S.C. § 552a(g)(1)(A).

5

his records, such relief is outside that provided by the Privacy Act, and his claim in that regard must be dismissed.

However, it appears from the Complaint that Lechliter is also requesting that I order amendments to the factual and historical record.[6] To the extent that he is requesting correction of factual and historical errors, his Complaint will not be dismissed for failure to state a claim, as such claims are cognizable under the Privacy Act. *See Kleiman*, 956 F.2d at 337-38.

B.   Statute of Limitations

The Department also argues that Lechliter's Complaint should be dismissed because it was filed outside the statute of limitations. Section 552a(g)(5) provides that an action under the Privacy Act must be brought "within two years from the date on which the cause of action arises." In cases like this, in which the plaintiff seeks to amend or correct the historical record, the two year period begins to run when "a person knows or has reason to know that the request [to the agency to amend the record] has been denied." *Englerius v. Veterans Administration*, 837 F.2d 895, 897 (9th Cir. 1988). Additionally, the Act only authorizes suit after an agency "makes a determination under subsection (d)(3) ... or fails to make such a review in conformity with that subsection." 5 U.S.C. § 552a(g)(1)(A). "An individual seeking amendment of a record must follow the procedures laid out in subsections 552a(d)(2) and (d)(3) of the Privacy Act, namely

---

[6] The only specific factual errors Lechliter refers to were those contained in the Department's September 2001 Memorandum of Considerations. (D.I. 14 at ¶ 15.) These errors were later corrected by the Department in July 2003. (*Id.* at ¶ 38.) However, the Complaint also refers to "41 specific factual errors" that Lechliter listed in his April 1, 2002 amendment request. (*Id.* at ¶ 20.) It is unclear in the Complaint whether Lechliter is still requesting correction of these "factual errors."

6

request amendment of the record and, if the request is denied, request review of that denial." *Blazy v. Tenet,* 979 F. Supp. 10, 18 (D.C. 1997). Therefore, no suit will lie under the Act until all administrative remedies have been exhausted. *See Dickinson v. Office of Pers. Mgmt.,* 828 F.2d 32, 40 (D.C. Cir. 1987).

In his Complaint, Lechliter alleges that during the period following April 17, 2002, when Ms. Nash of Personnel Command told him by telephone that his amendments request had been denied, he was pursuing further avenues of administrative relief. (D.I. 14 at ¶¶ 27-38.) The Department contends, however, that because Lechliter knew of the amendment denial on April 17, 2002, the statute of limitations began to run on that date.

Since Lechliter was required to exhaust administrative remedies before filing a complaint, *see Blazy,* 979 F. Supp. at 18; *Dickinson* 828 F.2d at 40, the Department's argument is not well-founded, at least not on the present record. At a minimum, there is a question of fact regarding whether Lechliter had exhausted his administrative remedies when the Defendants say he did. *Cf. Englerius,* 837 F.2d at 897 ("Where the agency has not issued an express denial of the request, the question when a person learns of the denial requires a factual inquiry and cannot ordinarily be decided on a motion to dismiss."). There does not appear to have been a final denial of Lechliter's request in April of 2002. There is, rather, some question regarding what was said by Ms. Nash and what authority she had to say it. *See supra* at n. 3. Moreover, during the period between the April 17, 2002 phone call and July of 2003, when the ABCMR took action on at least part of Lechliter's request to amend, it appears that various

subagencies of the Department of the Army either had Lechliter's request under review or were referring him to some other subagency to have it reviewed. Given that history, it is questionable whether the Defendants' statute of limitations argument could succeed even on a more complete record,[7] but I need not decide that now. Suffice it to say that, viewing the record in the light most favorable to Lechliter, as I must at this stage, I cannot say now that the statute of limitations began to run when the Defendants claim it did, and, accordingly, the motion to dismiss based on the statute of limitations will be denied.

C.   Damages Claim

In his amended complaint, Lechliter also asserts a claim for damages under § 552a(g)(1)(D) of the Privacy Act. Under that provision, the Act permits a civil action against an agency whenever the agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." The Act goes on to state that "[i]n any suit brought under ... (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful," the individual can collect damages "in an amount equal

---

[7]There is some risk that a ruling in the Defendants' favor on this point, certainly at this stage, would create a "damned if you do and damned if you don't" dilemma. A plaintiff would face a motion to dismiss for having failed to exhaust administrative remedies, if he filed an action before the government defendant thought he should have, or he would face a dispositive motion on the statute of limitations, if that same defendant thought the plaintiff had waited too long, the latter motion materializing even though the plaintiff was continuing to deal with the government in the interim. With no clear idea of where the okay-to-file interval lies between "too soon" and "too late," or how long the interval may last, plaintiffs like Lechliter could find the remedies Congress created in the Privacy Act to be illusory, a result that must be at odds with Congressional intent.

8

to the sum of– (A) actual damages ... [but not] less than the sum of $1,000;" plus fees and costs. 5 U.S.C. § 552a(g)(4); see also Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992) (finding that to prevail in a case of improper disclosure, a plaintiff must show "(1) the information is covered by the Act as a 'record' contained in a 'system of records'; (2) the agency 'disclose[d]' the information; (3) the disclosure had an 'adverse effect' on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was 'willful or intentional.'").[8]

The Department first asserts that Lechliter fails to allege any "adverse effects" other than a failure to amend his record. According to the Department, because Lechliter's requested relief for this violation is injunctive relief, it is improper under a § 552a(g)(1)(D) claim for damages. However, Lechliter alleges that he suffered increased symptoms of a diagnosed nervous condition, which were caused by the Department's "violations of its own regulations." (D.I. 14 at ¶ 42). Allegations of mental distress or increased emotional trauma have been held to be sufficient adverse effects for a claim for damages under § 552a(g)(1)(D). See Quinn v. Stone, 978 F.2d at 135 -136 ("both appellants allege that they have undergone stress and emotional anguish. Both also allege that they have suffered occupational losses due to the PGC investigation allegedly caused by the disclosures. We think these allegations sufficient

---

[8] The Third Circuit has not yet addressed what a plaintiff must prove to prevail on a claim under § 552a(g)(1)(D) of the Privacy Act that an amendment request was improperly denied. However, because a disclosure is not at issue here, the second requirement listed above, that "the agency 'disclose[d]' the information[,]" is not applicable in this case. Additionally, there is no dispute here that the records regarding Lechliter's retirement status are "records" within the meaning of the Privacy Act.

9

to satisfy the Act's adverse effect standing requirement."); *Albright v. United States*, 732 F.2d 181, 186 (D.C. Cir. 1984) ("emotional trauma alone is sufficient to qualify as an 'adverse effect' under Section 552a(g)(1)(D) of the Act.") Thus, Lechliter has sufficiently alleged that he suffered an "adverse effect."

Second, the Department alleges that Lechliter fails to establish a causal connection between the agency violation and the adverse effect. The Department claims that if any adverse effects were suffered by Lechliter, they were the result of inaccuracies in his record and not by the manner in which the army processed his Privacy Act request. The Complaint, however, specifically alleges that Lechliter's increased symptoms were caused by the Department's mishandling of his amendment request. (D.I. 14 at ¶ 42.) Therefore, Lechliter has adequately pleaded a causal connection. Whether the alleged causal relationship actually exists is a factual issue that cannot be determined at this stage of the proceedings. *See, Quinn* 978 F.2d at 137 (inferring from pleaded facts that causal connection could exist and thus denying defendant's motion for summary judgment).

Finally, to recover damages under the Privacy Act, the plaintiff must allege that an agency acted in a manner which was intentional or willful. 5 U.S.C. § 552a(g)(4). To meet this standard, Lechliter must demonstrate that the Department acted "without grounds for believing its action to be lawful, or flagrantly disregarding others' rights under the Act." *Britt v. Naval Investigative Service*, 886 F.2d 544, 551 (3d Cir., 1989) (citing *Albright v. U.S.*, 732 F.2D 181, 189 (D.C. Cir 1984)). This standard has been construed to require something more than gross negligence. *See Britt*, 886 F.2d at 551 (quoting legislative history).

Viewing the facts and all inferences in the light most favorable to Lechliter, the question of intent and willfulness cannot be finally answered at this stage, but they are sufficiently implied in the allegations[9] to require that the Motion be denied on this point as well. *Cf. Brooks v. Veterans Admin.*, 773 F.Supp. 1483, 1487 (D. Kan. 1991) (reasoning that in pre-trial stages of case "issues of what is intentional or what is reckless misconduct are often difficult to resolve ....".).

V.   **CONCLUSION**

Accordingly, the Department's Motion will be granted to the extent that any claim for review of the Department's decision not to change his retirement status from longevity to disability will be dismissed. In all other respects the Motion will be denied. An appropriate order will follow.

---

[9] While it appears at this point to be something of a stretch, the shuttling of Lechliter's request from one subagency to another and another over many months, with allegedly conflicting statements issuing from the different bureaucratic quarters, may amount to a flagrant disregard of Lechliter's rights, depending upon what Lechliter is able to prove about the way in which his request was handled. I reiterate that I am bound to give this *pro se* complaint a particularly liberal reading. *See supra* at Section III.

11